It's case number 4090866. For the appellant, we have Lance Cagle and for the appellee, John Tiefman. Mr. Cagle. May it please the court. Counsel. Mr. Malik was convicted after a bench trial of four counts of unlawful sale of drug paraphernalia. We believe those convictions should be reversed based on the briefs that have been filed with the court and the record that has been submitted with the court. And we base that contention on two basic premises. First, the trial court misinterpreted Section 6 of the Illinois Drug Paraphernalia Act. And that misinterpretation of the law and misapplication of the law, we believe, deprived Mr. Malik of a statutory presumption of legitimacy in his favor that we think should return the outcome in this case in his favor. The second basis for... Well, you mean if Section 6 weren't there, you'd have no argument? No, Your Honor, that's not our position. But I believe Section 6 was not meaningfully applied in this case, and I think that that would have led to a different factual analysis, which is the second basis of our appeal, that there was not sufficient facts demonstrating specific intent on the part of the defendant that these objects be used unlawfully. These are presented as two different items, two different bases for appeal. However, it's hard to divorce the two, because if you don't apply Section 6 and draw all reasonable and common-sense inferences in favor of the legitimacy of any transaction or item, which is what that statutory text requires, if you don't apply that text, it alters the fact-finding analysis. And it alters the factual findings of whether intent and whether, in fact, guilt was proven beyond a reasonable doubt. I don't know if I follow that. There's a presumption of innocence, correct? Yes, Your Honor. Including this case? Absolutely, Your Honor. And that presumption, however, is constitutional in origin. It is not statutory in origin. The statutory language in Section 6 supplements and enhances the constitutional presumption of innocence that, as you pointed out, is present in absolutely every criminal case. Well, how can you supplement a presumption of innocence? Like a double presumption of innocence? I mean, I don't quite... I believe so, Your Honor. And if I can explain. What Section 6 refers to is the factual inferences to be drawn. Generally, it is the province of a jury and a fact-finder to take a fact and draw whatever inferences they can reasonably draw from those facts. This statute is different because it contains a mandatory inference that shall be drawn in favor of legitimacy or the legality of the transaction that's in question before the court. So the legislature has taken the extra and, I would argue, unprecedented step in the criminal law of telling the fact-finder, you've got to draw a positive inference for the defendant from ambiguous or competing facts. Only if the inference, however, is reasonable and common sense. I would agree that is the language, Your Honor. However, I think in the context of inferences, there were reasonable and common sense inferences that were established in the record. It was established in the record, undisputed, that the items prosecuted in this case were susceptible with use for tobacco. They were dual-use items. Both officers, the only witnesses in the case, admitted that tobacco could be burned in these items. It was also undisputed that Mr. Malik owned and operated a tobacco store known as Leo's Tobacco, and that was a fairly large retail store in a very open location in the city of Pontiac. In fact, it was right in front of the Super Walmart, in the same general lot as the Super Walmart, and it was right across the street from an Arby's. There was no way we had any concealment of the activity, any possible hope of keeping the activity out of the purview, out of the notice of law enforcement, as it were. So I think there were numerous facts in this case that, when you look at the facts, could have been construed to favor innocence. Mr. Malik also had a sign up in his store that the items were for tobacco use only. I realize there's case law from 1985 that looks disfavorably on these disclaimers. However, when you have statutory text that says all reasonable inferences shall be drawn in favor of legitimacy, and you see a sign that instructs someone to use it for a legal purpose that's consistent with the other products in your store, I think it's very much a leap to draw an inference against the defendant in that regard. I think that's inconsistent with the presumption of innocence, and I think it's inconsistent with Section 6. And, Your Honor, I think most specifically disturbing was the characterization of Section 6. Obviously, during the closing argument and throughout the trial and the motion for a directed verdict, I pounded Section 6. I advanced Section 6 as requiring a look at the evidentiary facts and a light favorable to the defendant. The trial court indicated and specifically said on the record that this section of statutory text has nothing to do with the law. That was the exact quote. It's not an imposition of a new standard on the trial court. Your Honor, I believe that this is looking at this erroneously. And I think it's looking at it in the context of, I think in the motion reconsidered, the court said that it was there just to remind the court that presumption of innocence applied. That doesn't make any sense. The court doesn't need reminder that a presumption of innocence applies to a criminal case. There's something different here by virtue of Section 6, and I believe that it is the requirement that we look at competing inferences, reasonable and common sense inferences, as you pointed out, and a light favorable to the defendant. And dual use items, open and obvious locations, no other cannabis, drugs, drug references found in the store, and no verbal or written encouragement to use the items illegally. Those have to be inferences that are considered in the analysis of this case. And I think they're inferences that Section 6 requires to be drawn in favor of Mr. Malik. And when it's stated on the record and stated as a matter of a judicial finding that that adds nothing new to the law, I think there's been a misinterpretation and misapplication. Your Honor, much of the trial court argument and much of the issue that was argued in brief by the state referred to asking the court to apply a different mental state. There was substantial dispute at the trial court level as to what mental state applied. Representing the defendant, of course, I've advanced the specific intent standard that was articulated by the Second District and People v. Feld. Feld involved a case where manufacturers and people at a plant that made dugouts, devices that are commonly used to store cannabis, and a dugout in fact was one of the charged items in this case, were convicted of this offense, unlawful sale of drug paraphernalia. The Feld court on appeal reversed those convictions and made a very strong statement in favor of interpreting this statute in a manner favorable to criminal defendants. First, the Feld court noted that Section 6 creates a statutory presumption not found in other criminal statutes that is favorable to the defendant. The Feld court further stated that... Well, what is the statutory presumption that Section 6 creates? I think what it creates is that we look at the evidentiary facts where reasonableness and common sense allows assuming innocence. I think that in a normal case where the jury is free to draw whatever inferences they want and there is no Section 6, I think, okay, maybe if you see a for tobacco use only sign, that may not mean much to a fact finder. They may be able to say, well, he's just trying to cover himself. He knows what's really going on here. But when you have a mandatory inference by statute and then you see such a sign, I think it has to go the other way. I think there's no discretion in the fact finder. Well, the fact finder doesn't think that's a reasonable common sense inference to be drawn. Would that be a reasonable, not to answer a question with a question, Judge, but I don't think that's a reasonable conclusion that someone would print an instruction with the specific objective not to follow the instruction. Well, that's what the Feld court did, didn't it? That's the inference they drew. I forgot the name of the case. That case, Your Honor, was People v. Crow's Nest and People v. Ziegler. Right. Those cases were decided in 1985. Now, something very significant with regard to the statute happened after 1985. Specifically, the Illinois Supreme Court heard the case of People v. Monroe, and they made a decision in that case that an intent standard and not a constructive knowledge standard was the one to be applied to the definition of drug paraphernalia. At the time Crow's Nest and Ziegler were decided, the statute read, knows or should have known that the items in question were drug paraphernalia. The Illinois Supreme Court in Monroe said that doesn't work. They said that essentially there had to be a requirement of scienter to make the statute comport to constitutional requirements. Subsequently, the constructive knowledge language that was relied on by the court in Crow's Nest and Ziegler was stricken, and the exact language in Crow's Nest and Ziegler was that those items show an awareness of the nature of the items being sold. Well, awareness works if we're talking constructive knowledge. I don't think awareness works alone, anyway, when we're discussing specific intent. And the felt court in 1994 applied the specific intent standard to prosecutions under this Act based on the definition section in Section 2D of the Paraphernalia Act. Specifically, they applied Section 4-4 of the Illinois Criminal Code, which requires that it be the defendant's conscious objective to achieve the criminal result in question. Now, the state has argued against the application of that standard. That was a clear statement by the felt court, and it was based on the Illinois Supreme Court's own interpretation of the statute in People v. Monroe, and I think that is the standard of intent that is properly applied. So the next question in our next issue... Well, let me ask you this. If Section 6 was intended to create a statutory presumption, why didn't the legislature say that? Well, I think that... They didn't even use the word presumption. They used the word inference, or are you saying those were used interchangeably? And perhaps they are. I guess, Your Honor, I would suggest they are... I understand there is a distinction between a presumption and an inference as a pure matter of law. I'm not exactly clear that there is a distinction. It may be a very subtle one. As I've understood it, inference is defined in Blacks as a conclusion that a fact finder may, but is not required to draw. But the term shall being used in this particular section of text, I think changes that may language, obviously, to shall language. So if an inference can be defined as a conclusion to draw from a fact, a conclusion that can be drawn from a fact, I think that is what's being done here. Whether that's a presumption or a mandatory inference, I'd probably be split here. But I think even as a mandatory... Feld categorized it as a presumption. That's their language in that case, by the way. I assume they meant what they wrote. But even as a mandatory inference, there were plenty of facts in this case that could have cut both ways. These were dual-use items. They're dual-use items. There was no inference that Mr. Malik was involved in the criminal may-lose, the drug trade. There was a full search warrant executed on this business. Not a trace of any illegal drugs or cannabis found. That's the typical evidence you have in a paraphernalia case. If you look at your simple possession case, what's our simple possession facts? Kid gets pulled over in a car. He's found with something believed to be a one-hitter, a long what-have-you, and it has residue of cannabis in it. There's other cannabis found in the car, or he admits it was to be used with cannabis. That's typically how that case, by and large, is proven. But we're missing a lot in this case. We have a businessman that has other products for sale in his store, loose-leaf tobacco all over the place in his store. There are consistent uses that would make him a greater profit with the legal use for cannabis. And I believe the felled court made a pretty strong statement that common usage by other people is not enough. What has to be required under this statute is specific intent on behalf of the charged defendant under a Section 4-4 standard of the Illinois Criminal Code that these items be used illegally. And to get into the factual dispute in this case, there was no specific reference to cannabis in any of the conversations with the two undercover officers that made buys in this case. Both officers tried to initiate conversations to get Mr. Malik to discuss cannabis. Both of them failed. One officer went in and said, thanks for saving me a trip to a place known as Mother Murphy's in McLean County, which he believed to also be what he called a head shop. The response he got from Mr. Malik was, my prices are better. Now, that was cited in the state's brief. It was cited by the prosecution as a factor pointing to guilt, but I don't know what it really points to. We have an item that's sold at two different places, and he says my prices are better. I don't hear the word cannabis. I don't hear the word marijuana. I don't hear any slang terms for those items being suggested. Had the officer come in and say... Isn't one hitter a slang term? I think one hitter is, and again, I don't believe that term was ever used by Mr. Malik. Well, didn't one of the officers say, I'd like a one hitter, and he went and got one? I believe he pointed to the item, and I will rely on the record, Your Honor, if he described it as a one hitter when he instructed him to get it. I would categorize it as the name of an item. You don't think it's slang? I don't think it's slang used on the part of Mr. Malik. I don't think it can be construed as an instruction to use the item illegally. When he left with any of those items, Mr. Malik had no idea what he... couldn't have had any idea, absent being told by the officer, the undercover officer, what he was doing, how he was going to use those items. I understand what the common usage of the items is. I understand what the officer testified the common usage of the items is. But that does not prove a conscious objective. It just does not... It almost strikes me that, under your argument, there would have to be a confession in order for the state to ever prevail. Your Honor, that's not... Or an admission. I would disagree with that, because there are various things that could support this in a criminal case that are commonly used in criminal cases. Confession and admission is one of them. Of course, it may be the main one. They interviewed Mr. Malik, and they didn't get a confession. They had an opportunity to get that piece of evidence, and he told them the whole time it was for tobacco. You could also have cannabis or marijuana found in the store in close proximity. That would be strong circumstantial evidence. Again, it was not present in this case. You could also have an attempt to conceal the activity. We're in criminal cases all the time, and we hear the phrase, consciousness of guilt. We see evidence presented as to consciousness of guilt. When you are doing what you're doing, out in the open, in front of the Walmart, right off 116 in Pontiac, the busiest road in the city, the busiest retail district in the city, you're not doing a consciousness of guilt. That's a consciousness of innocence. That's doing what you're doing in front of everybody. You could have numerous other things that would suggest a conviction, that would support a conviction in the case, from residue in the items, drug culture references, other places in the store. Again, it was in the record that there was none of that. In the Crow's Nest and Ziegler cases, I believe those were music and record stores and those type of things. This was a pure tobacco store called Leo's Tobacco that sold tobacco products. Every kind of tobacco product was sold in the store, from chewing tobacco to cigarettes to loose leaf tobacco compatible with these pipes, cigars, creaming. It was all sold in the store. And these products, whatever their common use, were compatible with the legal use. And, Your Honor, I'd also make the point, I know I'm under two minutes here, but in terms of the sufficiency of the state's evidence, in other cases, specifically even in the Feld case where there was a reversal, there were multiple witnesses that testified as to both the common illegal use of the objects and a lack of legal use for the objects. That was not present in this case. The state did not call any witness that had any expertise in tobacco. Both state witnesses, both officers testified that they were non-smokers, had no knowledge of anything about whether or not these items can be used with tobacco. I believe they fell one witness short. Maybe the judge used common sense and inferred that one-hitters are not used for tobacco but are used for marijuana. Again, though, isn't that the common usage that was held insufficient in Feld? And does that establish, even circumstantially, a specific intent on the part of Mr. Feld? I thought Feld more hinged upon the fact that they couldn't prove the people, for a conviction. I believe that Feld made a statement that it didn't prove it with respect to those particular defendants. Let me ask you this. According to the, I believe, undervoted testimony of at least one of the officers, when the search warrant was executed, water bongs were found. Are those the type of bongs that is referred to in 600-2-5? I'm talking about 720-IL-TS, 600-2-5. Your Honor, I notice I'm out of time. May I respond to your question? Yes. Yes, to answer your question, yes. I would only specify that with respect to that section that illuminates possible items of drug paraphernalia, the Illinois legislature included the term intended throughout that section, kits intended to be used. When it talks about what the United States Supreme Court in Posters and Things referred to as a per se paraphernalia item, the Illinois Supreme Statute is different from that. It had the word intended throughout the item. There has been a clear intent by the Illinois legislature and the Monroe Court in the case law following Monroe that whether or not an item is drug paraphernalia is defined by the intent of the seller or the intent of the possessor. And I don't think Illinois has ever applied a per se rule that an item was drug paraphernalia and that includes this Court's decision in People v. Reeves and People v. Bostic in the possession context. Thank you, counsel. You'll have time in rebuttal. Thank you, Your Honor. Mr. Teefee, am I pronouncing that correctly? You are, yes. Okay, great. May it please the Court, counsel. My name is John Teefee. I'm here on behalf of the State. And defense counsel mentioned a couple areas. And I want to start with Section 6 also. And I think that all we need to do is look at the specific language of Section 6. And the first thing that Section 6 does is it provides the intent of the overall Drug Paraphernalia Control Act. And that intent is to suppress the commercial traffic of items that are clearly and beyond a reasonable doubt intended for the illegal and unlawful use of cannabis. And then Section 6 goes on to say, to that end, to the end of proving beyond a reasonable doubt, all reasonable and common sense inferences should be drawn in favor of the legitimacy of such items. And I think the question here is, I don't feel like any of us are in disagreement that there is some sort of, that reasonable and common sense inferences, that the trier of fact is required by this to draw reasonable and common sense inferences in favor of the defendant. The question is, in this case, is whether the trier of fact, in this case the sitting judge, could make any reasonable or common sense inferences in favor of legitimacy of the items that were seized. And to do that, we need to look at specifically what the trial judge said when rendering his decision. And the first thing he said, and defense counsel alluded to this, he actually made the statement that Section 6 did not add anything to the law. And after that, he talked about that he found the police officer's testimony to be credible. Right after he said that Section 6 did not add anything new to the law, the judge said that the standard remains beyond a reasonable doubt. And so while we might be able to go back and maybe the judge might have said things differently, had he gone back, all he was saying, if you look at the totality of the record and of his decision, all he was saying is that this does not change the standard. The standard remains beyond a reasonable doubt. And I believe, I really do believe that that's what the trial judge was saying when he was saying, this does not add anything new to the law. Simply saying that I am still the trier of fact, I am still basing this on whether the state proved beyond a reasonable doubt that this defendant was guilty. Counsel, on page 23 of your brief, you talk about the Feld case, which addressed the statute that earlier referred to the peculiar to and marketed for use language. And then the 2nd District and Feld distinguished posters because the statute in question did not contain the marketed for use language. But then you note that the legislature later amended the act to require that now the paraphernalia in question be, quote, intended to be used unlawfully, end quote. So the state has to prove that now. Is that right? Well, I believe, and that's a big crutch of the first part of my second argument, dealing with what science is required. And as you mentioned before, the previous statute, the previous language actually had marketed for, the marketed for language. And almost all the precedent that we could find, that I cited and defense counsel cited, dealt with how to interpret that marketed for language. And I believe taking out that marketed for language, and if you look at, you know, we're talking about Section 3 right now, that there is no intent specifically written into Section 3 of the, it says any person who keeps for sale, offers for sale, sells or delivers any commercial consideration, any item of drug paraphernalia. And the reason why I think that's important, and defense counsel talked about how you would prove possession of drug paraphernalia under this statute. And if you look at Section 3.5, it actually talks about possession of drug paraphernalia, and actually has the intent language directly written in there. It says a person who knowingly possesses an item of drug paraphernalia with the intent to use it in ingesting. So what I am arguing by, when the legislator took out the marketed for language, marketed for language seems specific, specifically regarding sellers. The sellers are the one who markets. And that's the, just as Turner mentioned, the failed case. So how should we interpret the language that the paraphernalia by a person charged with this offense, be intended to be used unlawfully? Are you talking about the actual definition of drug paraphernalia? Okay. If you read in the definition of drug paraphernalia to Section 3. So if we transfer the definition into Section 3. It would read, the person keeps for sale, offers for sale, or sells any item, which are intended to be used unlawfully in introducing cannabis into the human body. So I believe the intent, the subjective intent, the defense counsel is arguing, the subjective intent goes to the buyer of the drug. And I believe that the new mens rea that is, that should apply to this case, is that the seller knows, and I'm not saying he reasonably should know, that the seller knows that this defendant is likely to use this for smoking or inhaling cannabis. And the reason why I believe that, and I think that's why I cited, you know, the Posters case has been distinguished by a few other cases and a few other precedents that we both cited to. But all the cases that distinguish the Posters case still have the marketed for language. And even the Supreme Court in Posters distinguished that marketed for language to the intended for language. And I was just struck by the similarities between the federal statute that was discussed in Posters and the current statute that we have before us in Illinois. And some of the things that I pointed to in my brief, and I just want to go over again, that one of the things that the Supreme Court mentioned was that the term primarily intended for could refer to the intent of non-defendants. And I believe that's exactly what the new Illinois language does. I believe by taking out the marketed for language, they are taking out that specific intent. And the reason why I feel like I can say that is because marketed for language is so specific regarding sellers. The sellers are the ones who are doing the marketing. If I walked into an auto zone and bought a metal antenna for my car, but instead of putting it on my car I used it as a crack pipe, broke it down and used it as a crack pipe, is auto zone liable? I do not believe they are. Why not? Because I do not believe that, I believe it could be sufficiently argued that auto zone did not know that you were going to use that to smoke cannabis. I mean, that's not an unusual vehicle for smoking crack. An antenna is not? No. I did not know that, Your Honor. I think there would still have to be some surrounding evidence, as is present in this case, regarding the conversation that the officers had surrounding that. I think that if all you had was just that they sold this item, that the store was clearly an auto zone that sold car products, that was all car products, then no. I did not believe that. One of the things that I wanted to talk about in Section 6 is I feel like a lot of what's being discussed is that the trier of fact should have drawn these inferences because there was a possibility that some of these items could have been used to smoke tobacco. In Section 6, the specific language does not talk about the possibility. It talks about whether the trier of fact can make reasonable and common sense inferences. And the trier of fact in this case actually mentioned that he was using common sense several times. And he even mentioned that the items seized in this case, based on the testimony, have no known use other than the use with cannabis or controlled substances. And the only testimony offered in this proceeding is to that effect. So I cannot believe the legislator meant that if there was a possibility that these items could be used for a legitimate purpose, if there's a possibility that you could smoke tobacco, then they have to make an inference in favor of legitimacy. I believe that what has to be done is... But what's the language mean? I believe that if the trier of fact, to his discretion, can make a reasonable and common sense inference to that direction. Not if there's a possibility. And I believe that a reasonable inference could have been drawn if there was some evidence besides what was presented by the State to counter that these items actually have been used to smoke tobacco. You know that this one hitter... How about this one hitter and some of the other items are in this case, and it just so happens in that case there was a sign for tobacco use only. I think defense counsel would argue one inference, which a court has already made, a couple of courts have made, is that the guy realizes this stuff is used for marijuana. That's why the sign was placed in there. I think another inference would be, I'm advising you, purchaser, this must be used for tobacco, otherwise it's an improper and illegal purchase. So there's an inference that both helps and, I think, hurts the accused here. In that case, wouldn't the trial court, according to the way I read Section 6, have to make the inference in favor of the defendant? I believe that discretion is still to the trial judge whether that is a reasonable and common sense inference. Well, then the language means nothing, and the trial court was right, I guess. No, I think the language means something. I just feel like it gives the discretion to the trial court whether that can't... But the court already has that discretion. To make reasonable inferences in favor of the defendant? Sure, doesn't it? Courts got the discretion to make a reasonable inference any which way they want. Yeah, I mean, I guess it does, and I just feel like... I think it's a circular argument, then we're right back to what the trial court said. The language means nothing. Okay. I'm actually trying to ask that in question. You seem to say it means something, but I'm having a hard time figuring out what it means if your argument is that the trial court has the discretion to make reasonable inferences. Okay. I think that... Which I agreed. Yeah, and I don't know... The trial court does. I could not find any... We had talked about this, actually, before we came here. We couldn't find any legislative history regarding Section 6. This has never been extensively argued. How to give... You know, Feld did say that there was a presumption, but I just can't read a presumption into there because I just don't think that... I feel like you're taking... If you're giving too much of that power to the trial court, I think you're almost taking away that... I kind of got jumbled in my words there. I'm sorry, but... I feel like one of the problems with this could be that a trial judge... And I feel like that's what's being argued a little bit today, is that there's any possibility of being abused. And that's why I think we need to look at the items. And I guess I don't know... You know, as I go on that circular argument with you, Justice Turner, I do question now whether that... It does really add anything other than... Counsel, in Section 3A, which is the penalty section, what is the mental state set forth there? I'm sorry, Your Honor? What's the mental state in Section 3A? I believe the mental state... And you're talking about the sale of drugs, the... Okay. I believe, and I read this into it, if I read the definition of drug paraphernalia... My question is, what is the mental state set forth in the statute? I believe it is an objective... Counsel, there is no mental state set forth in the statute in 3A, is there? No. That answers my question. Okay. So if there's no mental state set forth in the statute concerning the mental state of the person who sells this, then why should we look to Section 2D, the definition of drug paraphernalia, and the language there talking about intended to be used unlawfully, as applying to the purchaser as opposed to the seller? Because then we have a mental state, don't we? Yeah. I was just reading in... I mean, since 3A contains the phrase drug paraphernalia, I think that it's proper to read in the definition of drug paraphernalia into 3A. Including the mental state intended for use and attaching it to defendants like this one? I don't believe it attaches defendants. I believe that if you take the definition of 3A... Well, if, as you argue, it's a mental state which attaches to the buyer, the buyer's purchases, then what mental state is present in the statute for this Class 4 felony? I believe... The mental state has to prove. And I believe that's why the Posters case is on line with this. That's a pencil. Okay, I'm sorry, Your Honor. I try to ask my questions explicitly. Okay. So, please answer directly. Okay. What mental state is required under this Act to prove violation of Section 3A under your theory? Under my theory, it would be an objective signatory requirement. Objective what? Signatory requirement. That the defendant who sold the drug paraphernalia knew that the buyer was going to use this item to ingest cannabis. Does any of that appear in the language of the statute? It does not. No. We'd have to read a mental state into this felony of the sort you just mentioned? Well, I believe that's exactly what the Supreme Court did because it was... You mean in the U.S. Supreme Court in the Posters case interpreting a federal statute? Yes. We don't have a federal statute. We have the state statute. Right. Was there a mental state present in the federal statute? There was not. It was similar to the one that we were discussing now. And I think that's why... And I'm sorry that I didn't directly answer your question, but I think one of the difficulties now in this Section 3A is that the legislator took out the explicit mental state, which exists. And I believe that if it was a subjective scienter as it was before and as defense counsel argues, then I believe they just could have put that same language into 3A as they did to possession of drug paraphernalia in 3.5A. Notice you argue in page 23 of your brief looking at this language that... In 23, I'm sorry? Page 23, right. You say the act requires that paraphernalia be intended to be used unlawfully. The defendant argues that the state was required to prove that it was his conscious objective that the items were sold to the officers to be used for the purpose of dealing with or storing cannabis. It is rational to say that it would be nearly impossible for an individual to be convicted under the act. It seems to me that maybe is what the legislature intended, given the peculiarity of Section 6. Yeah, I mean, I would hope that... It seems to me that they're saying, you know, we're going to impose additional burdens on the state to obtain convictions and maybe you're right, nearly impossible. Yeah, and I mean, it could be. But I think that when you look at the intent of this legislator to suppress the commercial traffic of items that are clearly and beyond a reasonable doubt intended for the illegal and unlawful use of cannabis and when, as in this case, we have two police officers who have been in the drug enforcement business for a long time, when you have them coming in and saying they've done hundreds of drug cases and they've seen these particular items used over and over and they've only seen these items used for inhaling cannabis, when the actual, the dugout box, for instance, actually had a, it had a compartment to store the cannabis and it had a compartment to store the one hitter pipe. Well, let me ask you something else, since a big part of your argument seems to me is that the phrase intended to be used unlawfully applies to the buyer, not the seller. And notice at the end of that paragraph, paragraph D, it then goes on to say it includes the definition of drug paraphernalia, but it's not limited to, and then there are, there's a list of six separate paragraphs of stuff. Yes. Are you on section two here, Hunter? Yes. Okay. Section 2D. And the last paragraph says, including then the introductory language, it includes, but is not limited to, any item whose purpose as announced or described by the seller is for a use in violation of the SEC. Doesn't the presence of that language suggest that the intent, that the paragraph is talking about belongs to the seller, not the buyer? I believe that that is, no, I do not believe it does. Why? I believe that the inclusion of that in the bottom of section 2 just provides the state with further guidelines how to prove the intent that is required by the statute. And one way they can do that is, obviously, if the seller intends, and I think this probably goes back to when the marketed forelanguage was in there, that if the seller clearly describes this item as something that So with no explanation, the legislature shifted from the body of section D talking about the buyer's intent to the bottom of that same section of number 6, D6, talking about the seller's intent. Is that your position? I guess it is my position. I just feel like section 2 is, you know, section 3 is actually the statute that he's being convicted under. But section 3 contains no mental state of any kind. Correct. We have to infer one. We have to find one present, since it's a felony. Right. You're not arguing that this is an absolute liability offense, are you? No, I'm not. Okay. Well, then, we shouldn't find the mental state of intent for the legal use present in the statute? I'm sorry, Your Honor. Could you repeat that question? Your argument is we should not view the mental state as required by the act of the intent on the part of the defendant that the item be used unlawfully? No. I mean, I'm arguing that, and I want to be clear, too, since my time is short, that under any objective, if you guys find, and I feel like, I'm sorry, if Your Honors find that this is a subjective intent requirement, then I still believe, and my argument is still firm, that the state proved beyond a reasonable doubt that this defendant was proved guilty. And I believe that you can look at specific things, and if we quickly talk about a subjective intent, defense counsel talked about the conversation. One of the officers asked for a one-hitter, which I believe is slang for, you know, a cannabis. And one of the officers testified that he cannot think of any reason, and I can't think of any reason either why you'd take one hit. And I see my time is up. May I finish this thought? Sure. All right. There was no testimony, and I cannot think of any reason why you'd take one hit of cannabis. Also, there are the detox bottles. You mean one hit of tobacco? I'm sorry, one hit of tobacco, yes. There were the detox bottles. One of the officers asked the defendant if this works, and the defendant responded, yes, he's heard that people are passing their tests. So I believe under a subjective – Well, let me ask you the last point, going back to Justice Appleton's point. It all goes up. The guy says, gee, I've heard that I can use these, what was it, wood chips? Antennas. Antennas. He says, ladies, these antennas smoke cocaine. Is that right? The guy looks at him and says, I don't know. Well, give me one of them. I'm interested. I'm intrigued. How about now? No, I did not believe so, because I do not feel like the seller is – he still said, I don't know. And I feel like in this case, the defendant actually stated that people are passing their tests. Well, what if the buyer makes it clear that's why he's buying it? I'm going to buy this to smoke cocaine. Is AutoZone not committing a felony if it says okay? I think if the buyer was very clear that he was buying this item to inhale it. I just wanted to smoke cocaine. Now what? Am I guilty as an AutoZone salesman? Yes. I think that would be a very good case against the AutoZone salesman in that case. Thank you, Your Honor. Counsel, thank you. Rebuttal, please. Thank you. Counsel, how does one make a pipe look like a credit card? I don't know what the manufacturing apparatus of that would have been. Mr. Malik didn't make a pipe look like anything. I think it was an item that was being sold in the store. The way I read the facts is a pipe, which is used to smoke, looks like a credit card. Did I read that correctly? I think confused. Maybe an object to hold that they thought was a dugout type object was used for that. Oh, okay. I don't think a pipe looked like a credit card. The record is what it is. I must have misread it. Good, because I was having a hard time figuring that out. Your Honor, just a couple of points with respect to Section 6. I'm getting into reasonable and common sense inferences. The judge didn't try to draw any inferences in light of Section 6. He said it added nothing to the law. Your Honor, the court can't do that. You can't read statutory text in a manner that renders it meaningless. That is a fundamental rule of interpretation. You can't just say it's not there, it adds nothing. It has to add something or it wouldn't have been written down. We have murder statutes, sexual assault statutes, tons of more penal criminal offenses than this. We don't have that kind of language in those statutes. It had to add something. I would note it is also a jury instruction. If all we were talking about here is the basic presumption of innocence in every criminal case, the standard jury instruction as to those presumptions and burden of proof would be sufficient for a jury hearing this case. But we added the same language in Section 6 to the jury instruction. That tells me that this alters the factual analysis and isn't some kind of reminder of a basic constitutional presumption. When we get into whether this is subjective intent or objective intent, I would point to the vast differences between the federal statute and the Illinois statute. There is no Section 6 in the federal statute. That's one major difference. That shows me that the Illinois legislature took a far more conservative approach toward the criminalization of these items and the net they wanted to cast than the federal legislature did. Also, the term that was interpreted in the proceedings was primarily intended or designed for use. The Illinois statute does not have the term primarily as a modifier. Putting primarily in there means multiple people could think multiple things. It implies the social view of the item. That's why I think the Supreme Court ruled as they did. Illinois, in their statute, throughout the statute, not just in 2D, but throughout the statute, uses the term intended. Intended is what's said in Section 2D. Intended is what is said in Section 6. Intended is what is said in the example section of these six paragraphs that Justice Steigman pointed out. The term intent has a very clear and well-defined meaning as mens rea. It is defined by statute in Illinois. It was applied by the federal court. I think we can go all the way back to the Monroe Court. There has not been a conviction sustained against a retailer of tobacco products since the Monroe case in 1987. Not one I feel in Illinois that I've found. I think the reason why is because Monroe made a very clear statement, and here's the language the court used. The very definition of drug paraphernalia is defined by the seller's intentions. It's got to be the seller. It can't be the buyer. And even if you accepted the argument that it could be the buyer, nothing the buyers said in this case. If one of those police officers had bought that bong instead of a one hitter, would you have a different case on your hands? Because the bong is listed? Not necessarily, Your Honor. I don't think it's listed because the word intended modifies even the listed items. Had the officer bought a bong and said, I'm going to go smoke some dope tonight, boy, this will really be good for that party I'm going to have to smoke this dope, then, hey, we've got a different case. Then we've got a different case, just like in the auto zone. Well, what else can you do with a bong? I don't know. A bong can't burn tobacco. I specifically asked both officers if the items that were charged could burn tobacco. They both unequivocally said yes. It doesn't mean it's a common usage, but it could be used. But the items did not include a bong. The items didn't include a bong. There was a one hitter, two one hitters, a dugout, and a glass bowl. All of those items could hold tobacco just as easily as they could hold cannabis, and the state never approved his intent that these be used for cannabis once they left the state. Okay, thank you, counsel. Thank you, Your Honor. The case is submitted, and the court will stand in recess.